O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JULIAN RIVERA VARGAS,

　　　　　Plaintiff,

　　v.

NANCY A. BERRYHILL,
Commissioner of Social Security,

　　　　　Defendant.

Case No.  EDCV-16-01027-KES

MEMORANDUM OPINION
AND ORDER

Plaintiff Julian Rivera Vargas appeals the final decision of the Commissioner denying his application for Social Security Disability Insurance Benefits ("DIB"). See Administrative Record ("AR") 16-23.  For the reasons stated below, the Commissioner's decision is affirmed.

**I.**

**BACKGROUND**

On November 16, 2016, Plaintiff filed an application for Social Security DIB alleging a disability onset date of March 15, 2012 due to multiple impairments. AR 148.  A hearing was held before an Administrative Law Judge ("ALJ") on August 12, 2014.  AR 29-54.  The ALJ issued an unfavorable decision on September 25, 2014.  AR 10-27.

1

The ALJ found that Plaintiff remained insured through June 30, 2013. AR 16, 18.  The ALJ found that Plaintiff had the following severe impairments: disc disease of the cervical spine, disc disease of the lumbar spine, and right shoulder impingement syndrome.  AR 18.  The ALJ also found that Plaintiff had hypertension and diabetes, but that these were non-severe.  AR 18-19.

The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a range of medium work.  AR 19.  The ALJ found Plaintiff can lift and/or carry 50 pounds occasionally and 25 pounds frequently; can stand and/or walk for 6 hours out of an 8-hour workday; can sit for 6 hours out of an 8-hour workday; can occasionally climb ladders, ropes or scaffolds; can frequently climb ramps and stairs; can frequently balance, stoop, kneel, crouch, and crawl; and can perform occasional overhead reaching with the right upper extremity.  AR 19. Based on this RFC and the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff could perform his past relevant work as a floor installer. AR 22-23.

Plaintiff requested review from the Appeals Council, which denied review on March 24, 2016.  AR 1-9.  On that date, the ALJ's decision became the final decision of the Commissioner.  <u>See</u> 42 U.S.C. § 405(h).  This timely civil action followed.

## II.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole.  42 U.S.C. § 405(g); <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Parra v. Astrue</u>, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion.  <u>Richardson</u>, 402 U.S. at 401; <u>Lingenfelter v.</u>

2

1   Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  It is more than a scintilla, but less

2   than a preponderance.  Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec.

3   Admin., 466 F.3d 880, 882 (9th Cir. 2006)).  To determine whether substantial

4   evidence supports a finding, the reviewing court "must review the administrative

5   record as a whole, weighing both the evidence that supports and the evidence that

6   detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715,

7   720 (9th Cir. 1998).  "If the evidence can reasonably support either affirming or

8   reversing," the reviewing court "may not substitute its judgment" for that of the

9   Commissioner. Id. at 720-21.

10      "A decision of the ALJ will not be reversed for errors that are harmless."

11   Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  Generally, an error is

12   harmless if it either "occurred during a procedure or step the ALJ was not required

13   to perform," or if it "was inconsequential to the ultimate nondisability

14   determination." Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir.

15   2006).

16   **A.     The Evaluation of Disability.**

17      A person is "disabled" for purposes of receiving Social Security benefits if he

18   is unable to engage in any substantial gainful activity owing to a physical or mental

19   impairment that is expected to result in death or which has lasted, or is expected to

20   last, for a continuous period of at least 12 months.  42 U.S.C. § 423(d)(1)(A);

21   Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).  A claimant for disability

22   benefits bears the burden of producing evidence to demonstrate that he was

23   disabled within the relevant time period. Johnson v. Shalala, 60 F.3d 1428, 1432

24   (9th Cir. 1995).

25   **B.     The Five-Step Evaluation Process.**

26      The ALJ follows a five-step sequential evaluation process in assessing

27   whether a claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Lester

28   v. Chater, 81 F.3d 821, 828 n. 5 (9th Cir. 1996).  In the first step, the Commissioner

1    must determine whether the claimant is currently engaged in substantial gainful

2    activity; if so, the claimant is not disabled and the claim must be denied.  20 C.F.R.

3    §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

4            If the claimant is not engaged in substantial gainful activity, the second step

5    requires the Commissioner to determine whether the claimant has a "severe"

6    impairment or combination of impairments significantly limiting his ability to do

7    basic work activities; if not, a finding of not disabled is made and the claim must be

8    denied.  Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

9            If the claimant has a "severe" impairment or combination of impairments, the

10   third step requires the Commissioner to determine whether the impairment or

11   combination of impairments meets or equals an impairment in the Listing of

12   Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if

13   so, disability is conclusively presumed and benefits are awarded.  Id.

14   §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

15           If the claimant's impairment or combination of impairments does not meet or

16   equal an impairment in the Listing, the fourth step requires the Commissioner to

17   determine whether the claimant has sufficient residual functional capacity ("RFC")

18   to perform his past work; if so, the claimant is not disabled and the claim must be

19   denied.  Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  The claimant has the burden

20   of proving he is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If

21   the claimant meets that burden, a prima facie case of disability is established.  Id.

22           If that happens or if the claimant has no past relevant work, the

23   Commissioner then bears the burden of establishing that the claimant is not

24   disabled because he can perform other substantial gainful work available in the

25   national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  That

26   determination comprises the fifth and final step in the sequential analysis.  Id.

27   §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n. 5; Drouin, 966 F.2d at 1257.

28

4

**III.**

**ISSUES PRESENTED**

Plaintiff's appeal from the ALJ's unfavorable decision presents the following two issues:

Issue One:  Whether the ALJ properly assessed Plaintiff's credibility.

Issue Two:  Whether the ALJ properly developed the vocational aspects of the case.

(Dkt. 20 [Joint Stipulation or "JS"] at 4.)

**IV.**

**DISCUSSION**

**A.     Issue One: Whether the ALJ Properly Assessed Plaintiff's Credibility.**

Under Issue One, Plaintiff actually makes three separate arguments, only one of which concerns the ALJ's credibility finding.  The Court addresses each of these arguments in turn.

**1.     Whether the ALJ erred by relying on the opinion of the consultative medical examiner and the two non-examining State agency physicians.**

Plaintiff argues, "The ALJ committed reversible error in relying upon the opinions of the orthopedic examiner [Dr. Robert MacArthur] and the subsequent opinions rendered by the state agency reviewing physicians [Dr. Thu N. Do and Dr. S. Clancey] when the orthopedic examiner clearly never reviewed any medical evidence in this case including the objective evidence such as the EMG/Nerve Conduction Study and multiple MRI reports."  (JS at 6.)  The Commissioner responds that any error by Dr. MacArthur in not reviewing the medical records was harmless, because "Drs. Do and Clancey expressly considered the MRI evidence and the EMG/Nerve Conduction Study, and they affirmed Dr. MacArthur's assessment."  (JS at 11.)  Moreover, the Commissioner argues, Dr. MacArthur did review x-rays of Plaintiff's lumbar and cervical spine, and perform his own

5

1    complete physical examination.  (Id.)

2            a.      Applicable Law.

3            In deciding how to resolve conflicts between medical opinions, the ALJ must

4    consider that there are three types of physicians who may offer opinions in Social

5    Security cases: (1) those who directly treated the plaintiff, (2) those who examined

6    but did not treat the plaintiff, and (3) those who did not treat or examine the

7    plaintiff.  See 20 C.F.R. § 404.1527(c); Lester v. Chater, 81 F.3d 821, 830 (9th Cir.

8    1995) (as amended on April 9, 1996).  A treating physician's opinion is generally

9    entitled to more weight than that of an examining physician, which is generally

10   entitled to more weight than that of a non-examining physician.  Lester, 81 F.3d at

11   830.

12           The ALJ must give specific and legitimate reasons for rejecting a treating

13   physician's opinion in favor of a non-treating physician's contradictory opinion or

14   an examining physician's opinion in favor of a non-examining physician's opinion.

15   Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citing Reddick v. Chater, 157

16   F.3d 715, 725 (9th Cir. 1998)); Lester, 81 F.3d at 830-31 (citing Murray v. Heckler,

17   722 F.2d 499, 502 (9th Cir.1983)).  If the treating physician's opinion is

18   uncontroverted by another doctor, it may be rejected only for "clear and

19   convincing" reasons.  Lester, 81 F.3d 821, 830 (9th Cir. 1996) (citing Baxter v.

20   Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)).

21           However, "[t]he ALJ need not accept the opinion of any physician, including

22   a treating physician, if that opinion is brief, conclusory, and inadequately supported

23   by clinical findings."  Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002);

24   accord Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  The factors to

25   be considered by the adjudicator in determining the weight to give a medical

26   opinion include: "[l]ength of the treatment relationship and the frequency of

27   examination" by the treating physician; and the "nature and extent of the treatment

28   relationship" between the patient and the treating physician.  Orn, 495 F.3d at 631

1  (quoting 20 C.F.R. § 404.1527(d)(2)(i)-(ii)).

2      "When an examining physician relies on the same clinical findings as a

3  treating physician, but differs only in his or her conclusions, the conclusions of the

4  examining physician are not substantial evidence." Orn, 495 F.3d at 632 (citation

5  omitted).  "By contrast, when an examining physician provides independent clinical

6  findings that differ from the findings of the treating physician, such findings are

7  substantial evidence." Id. (citation omitted).  Thus, "the opinions of non-treating or

8  non-examining physicians may … serve as substantial evidence when the opinions

9  are consistent with independent clinical findings or other evidence in the record."

10  Thomas, 278 F.3d at 957; see also Pruitt v. Astrue, 2010 WL 1330164, at *3 (C.D.

11  Cal. Mar. 31, 2010) ("If there is 'substantial evidence' in the record that contradicts

12  the opinion of a treating physician, such as an examining physician's opinion

13  supported by independent clinical findings, the opinion of the treating physician is

14  no longer entitled to controlling weight.").

15      If an examining physician did not review all of the plaintiff's treatment

16  records, this may be a reason for giving greater weight to the opinion of a treating

17  physician who is more familiar with the longitudinal treatment record; yet there is

18  no per se rule that an examining physician's opinion cannot be relied upon in such a

19  case.  Compare Jackson v. Astrue, 2012 WL 639304 (E.D. Cal. Feb. 24, 2012)

20  (finding the ALJ "erred in rejecting the opinion of plaintiff's treating physician in

21  favor of an examining physician's opinion who did not review the entirety of

22  plaintiff's medical records") with Dungan v. Colvin, 2016 WL 632581, at *6 (E.D.

23  Cal. Feb. 17, 2016) (affirming ALJ's reliance on examining physician's opinion,

24  despite plaintiff's argument that physician did not review all of the plaintiff's

25  medical records, because the physician reviewed some records and made his own

26  independent clinical findings).

27          b.      The ALJ's Analysis of the Medical Opinions in the Record.

28      The ALJ reviewed medical opinions from the following sources:

7

1   (1) Plaintiff's treating chiropractor in connection with her worker's compensation

2   claim, Mahbobeh Soltani, DC; (2) examining physician orthopedist Dr. Robert

3   MacArthur, MD; (3) two non-examining State agency medical consultants, Drs. Do

4   and Clancey; and (4) a functional capacity evaluation by chiropractor Holli Banes,

5   DC.

6        The ALJ gave Soltani's and Banes's opinions little weight because

7   chiropractors are not acceptable medical sources under Social Security regulations.

8   AR 22.  <u>See</u> 20 C.F.R. § 404.1513(a) (listing "acceptable medical sources");

9   <u>Paulson v. Astrue</u>, 368 F. App'x 758, 760 (9th Cir. 2010) ("[T]he ALJ did not

10  commit reversible error in failing to consider the opinion of Paulson's chiropractor"

11  because his opinion "contradict[ed] acceptable medical sources, which are

12  generally given greater weight").  The ALJ also found Soltani's opinion that

13  Plaintiff was "temporarily totally disabled" of little utility because it was done in

14  the differing context of worker's compensation claims."  AR 22.  <u>See</u> 20 C.F.R.

15  § 404.1504 ("[A] determination made by another agency that you are disabled … is

16  not binding on us.");  <u>Booth v. Barnhart</u>, 181 F. Supp. 2d 1099, 1104 (C.D. Cal.

17  2002) ("Workers' compensation disability ratings are not controlling in disability

18  cases decided under the Social Security Act, and the terms of art used in the

19  California workers' compensation guidelines are not equivalent to Social Security

20  disability terminology.").  The ALJ therefore relied on the opinions of examining

21  Dr. MacArthur and the two non-examining doctors, Drs. Do and Clancey, as they

22  were the only other medical opinions in the record.  AR 21-22.

23              c.     Dr. MacArthur's Opinion.

24       Dr. MacArthur examined Plaintiff on March 23, 2013.  AR 292.  Although

25  he noted that "no orthopaedic records were available for review," he did review x-

26  rays of Plaintiff's cervical and lumbar spine.  AR 293, 296-97.  He also conducted a

27  "historical interview" with Plaintiff, who he found to be "a credible historian."

28  AR 292-93.

1    Dr. MacArthur noted that Plaintiff "was able to get on and off the

2  examination table without assistance," that he was "in apparent comfort throughout

3  the interview and evaluation process," and that he did "not appear to be in acute or

4  chronic distress."  AR 294.  He found that Plaintiff had a normal gait and did not

5  use any assistive devices for ambulation.  AR 294.  He found, "All joint ranges of

6  motion are within normal limits," although the right shoulder was "positive for mild

7  impingement at 160 degrees, +/- Jobe's test[.]"  AR 295.  He found slight

8  limitations on Plaintiff's range of motion in the cervical and thoracolumbar spine.

9  AR 295.  A straight leg test was negative in both legs.  AR 296.  Regarding

10  Plaintiff's hands and feet, he observed that Plaintiff "was able to manipulate the use

11  of a pen with ease" and that Plaintiff did "not restrict the use of either hand during

12  examination."  AR 296.  He also found that Plaintiff had normal motor and grip

13  strength.  AR 296.

14    Based on the physical examination and x-rays, Dr. MacArthur diagnosed

15  Plaintiff with multilevel degenerative disc disease in the cervical and lumbar spine,

16  as well as a "probable partial tear rotator cuff and mild impingement" in the right

17  shoulder.  AR 297.  The RFC he assessed was for the most part consistent with the

18  RFC ultimately assessed by the ALJ, namely: that Plaintiff could perform a range

19  of medium work as follows: (1) lift and/or carry 50 pounds occasionally and 25

20  pounds frequently; (2) stand and/or walk up to 6 hours in a normal 8-hour workday;

21  (3) sit for up to 6 hours in an 8-hour work day; and (4) occasionally climb ladders,

22  ropes, and scaffolds.  AR 297-98.  The ALJ imposed one limitation that Dr.

23  MacArthur did not: the ALJ limited Plaintiff to only occasional overhead reaching,

24  whereas Dr. MacArthur opined that Plaintiff could reach without limitations in all

25  directions, including overhead.  Compare AR 298 (Dr. MacArthur's opinion) with

26  AR 19 (ALJ's findings).

27    d.    The EMG/Nerve Conduction Study and MRIs.

28    Plaintiff argues it was error for the ALJ to rely on Dr. MacArthur's opinion

9

1  because Dr. MacArthur did not review "objective evidence such as the EMG/Nerve

2  Conduction Study and multiple MRI reports."  (JS at 6.)

3       The EMG/Nerve Conduction Study that Plaintiff cites was performed on

4  June 8, 2012 and found "severe peripheral neuropathy" and "possible left S1

5  radiculopathy."  AR 281.  The MRIs Plaintiff refers to were performed on April,

6  August, and September of 2012.  AR 287-90.  The April 2012 MRI of Plaintiff's

7  cervical spine showed "cervical muscular spasm," a "remote central compression

8  fracture of the C6 vertebral body"; "mild spondylosis" of the C3-C4, C5-C6, and

9  C6-C7 vertebrae; and disc herniation, protrusion, and bulging of various vertebrae.

10  AR 285, 290.  The August 2012 MRI of Plaintiff's cervical spine found evidence of

11  disc bulging and spinal stenosis.  AR 287.  The September 2012 MRI of Plaintiff's

12  right shoulder was "consistent with small intrasubstance tears and tendinitis and a

13  possible "stress reaction or bone bruise."  AR 288.

14            e.      Analysis.

15       As noted above, Dr. MacArthur found that Plaintiff had multilevel

16  degenerative disc disease of the cervical and lumbar spine, based on x-rays he

17  reviewed.  AR 297.  The EMG/Nerve Conduction Study and MRIs are consistent

18  with this diagnosis, and Plaintiff does not explain how they show a more limited

19  RFC than that found by Dr. MacArthur.  (JS at 5-6.)  To the extent Plaintiff is

20  arguing that these tests show that Plaintiff suffered from more functional limitations

21  due to pain, the ALJ was entitled to rely on Dr. MacArthur's independent

22  observation that Plaintiff appeared to be in no acute distress during the March 2013

23  exam, which was conducted at least 6 months after those tests.  AR 294.  See Orn,

24  495 F.3d at 632 ("when an examining physician provides independent clinical

25  findings … such findings are substantial evidence"); Dungan, 2016 WL 632581, at

26  *6 (affirming ALJ's reliance on examining physician's opinion, despite plaintiff's

27  argument that physician did not review all of the plaintiff's medical records,

28  because the physician reviewed some records and made his own independent

10

clinical findings).

The Court finds no error in the ALJ relying on Dr. MacArthur's opinion. This is particularly true because the record contains no contrary opinion from a treating physician, other than the opinions from Plaintiff's treating chiropractors. The ALJ appropriately gave those opinions little weight, as discussed above, and Plaintiff does not challenge that finding.

**2.      Whether the ALJ erred in finding that Plaintiff's diabetes is not a severe impairment.**

a.      The ALJ's Findings Regarding Plaintiff's Diabetes.

In concluding that Plaintiff's diabetes was not severe, the ALJ made the following findings:

> The mere diagnosis of an impairment, without more, does not establish that the impairment is "severe" or "disabling."  [Plaintiff's] diabetes was being managed medically and should be amenable to proper control by adherence to recommended medical management and medication compliance.  There is no evidence [Plaintiff] suffered any end organ damage.   [Plaintiff] has been diagnosed with diabetic retinopathy; however, the vision testing performed in March of 2013 showed he had a visual acuity of 20/50 in both eyes.  He was able to move about visually without assistance (Ex. 4F, p. 4 [AR 294, report of consulting examining physician Dr. MacArthur]).   The more recent treatment notes in 2014 do not suggest a worsening of his vision or other acute pathology related to [Plaintiff's] eyes.  (Ex. 9F [AR 454-60, treatment notes from February to July 2014] and 11F [AR 471-75, treatment notes from March 2014].)

AR 19.

b.      Analysis.

Plaintiff argues that the ALJ failed to account for additional side effects of

his diabetes, other than retinopathy and the lack of end organ damage.  (JS at 6.)
Plaintiff cites evidence that he had peripheral neuropathy, kidney disease, and an
abnormally high hemoglobin A1c level of 11.4 in September 2013.  (Id.)  The
Commissioner responds that it is not clear from the record that the peripheral
neuropathy and kidney disease were related to Plaintiff's diabetes.  (JS at 11-12.)
The Commissioner argues that the elevated A1c merely corroborates the diagnosis
of diabetes, which is not in dispute.  (JS at 11.)  The Court finds that there is
substantial evidence in the record to support the ALJ's conclusion that Plaintiff's
diabetes was not a severe impairment.

Regarding peripheral neuropathy, Plaintiff cites an electro-diagnostic study
performed on June 8, 2012, which showed "severe peripheral neuropathy."  (JS at
5, citing AR 281).  Although Plaintiff asserts that this "is attributable to Plaintiff's
severe diabetic condition" (JS at 6), the Commissioner is correct that Plaintiff has
not cited, and this Court has not found, evidence in the AR that a physician ever
reached this conclusion.[1]

Regarding kidney disease, on February 14, 2014, Dr. Vien Doan, D.O.
diagnosed Plaintiff with "Diabetic nephropathy secondary to longstanding type II
diabetes."  AR 474.[2]  Dr. Doan noted, "Needs better control of DM [diabetes
mellitus] but needs Nephro consult."  AR 474.  Plaintiff thereafter had a consult
with nephrologist Dr. Chao H. Sun, M.D.  AR 459.  On May 5, 2014, Dr. Sun
diagnosed "chronic kidney disease stage II mild" and recommended that Plaintiff

---

[1] Plaintiff chose not to include a reply to the Commissioner's argument in the
JS.  (Dkt. 9 at 2 [scheduling order allowing optional reply].)

[2] "Nephropathy means kidney disease or damage."  WebMD,
http://www.webmd.com/diabetes/tc/diabetic-nephropathy-topic-overview#1 .
Despite Dr. Doan's conclusion that the kidney disease was secondary to Plaintiff's
diabetes, Plaintiff testified at the administrative hearing that he thought it arose
from his use of certain pain medications.  AR 42.

continue his current medications; begin taking Norvasc for his high blood pressure; practice "dietary control"; and return for a follow-up visit in 3 months.  AR 457, 459.  Dr. Sun therefore did not recommend any new treatment specifically directed at the kidney disease, which he described as mild.  Plaintiff does not explain how he believes this kidney disease limits his ability to work.

Regarding the A1c, it is true that Plaintiff had an elevated A1c of 11.4 in September 2013.  See AR 339.  As one court has explained, "The hemoglobin A1c test demonstrates 'whether the blood sugar level has been controlled over the previous few weeks. The normal level for glycoslated hemoglobin is less than 7 percent.  Diabetics rarely achieve such levels, but tight control aims to come close to it.  Levels above 9 percent show poor control, and levels about 12 percent show very poor control.'"  Myngoc Nguyen v. Colvin, 2013 WL 1970242, at *4 (C.D. Cal. May 13, 2013) (quoting The Merck Manual of Medical Information, at 722-23 (Home ed.1997)).

One high A1c test does not undermine the ALJ's finding that Plaintiff's diabetes "should be amenable to proper control by adherence to recommended medical management and medication compliance."  AR 19.  After the September 2013 A1c test, Plaintiff began treatment with Dr. Vien Don, DO and Dr. Chao H. Sun, MD for his diabetes.  He began keeping daily logs of his blood glucose readings.  AR 466-70 (readings between February and June 2014), AR 240 (readings between July and August 2014).  In February 2014, Dr. Don commented that Plaintiff's A1c was too high, and he would "add Onglyza and follow up in 1 month with home readings."  AR 474.  In May 2014, Dr. Sun recommended that Plaintiff continue his current medications and focus on "dietary control."  AR 459. The blood glucose levels in Plaintiff's logs declined slightly after these treatments: in February, his blood glucose readings were as high as 227, but after March, his blood glucose readings did not rise over 200 and generally fell in the 160-180 range.  AR 466-70, AR 240.  These records support the ALJ's finding that

13

1  Plaintiff's diabetes could be controlled through compliance with recommended
2  treatments.

3     In sum, the ALJ's finding that Plaintiff's diabetes was not a severe
4  impairment is supported by substantial evidence.

5     **3.     Whether the ALJ erred by failing to specify which statements by**
6        **Plaintiff the ALJ found to be not credible and by finding Plaintiff's**
7        **daily activities were inconsistent with his testimony.**

8        a.     Applicable Law.

9     An ALJ's assessment of symptom severity and claimant credibility is entitled
10 to "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v.
11 Heckler, 779 F.2d 528, 531 (9th Cir. 1986). "[T]he ALJ is not required to believe
12 every allegation of disabling pain, or else disability benefits would be available for
13 the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." Molina v.
14 Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks omitted).

15    If the ALJ finds testimony as to the severity of a claimant's pain and
16 impairments is unreliable, "the ALJ must make a credibility determination with
17 findings sufficiently specific to permit the court to conclude that the ALJ did not
18 arbitrarily discredit claimant's testimony." Thomas v. Barnhart, 278 F.3d 947, 958
19 (9th Cir. 2002). In doing so, the ALJ may consider testimony from physicians
20 "concerning the nature, severity, and effect of the symptoms of which [the
21 claimant] complains." Id. at 959. If the ALJ's credibility finding is supported by
22 substantial evidence in the record, courts may not engage in second-guessing. Id.

23    In evaluating a claimant's subjective symptom testimony, the ALJ engages in
24 a two-step analysis. Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir.
25 2007). "First, the ALJ must determine whether the claimant has presented
26 objective medical evidence of an underlying impairment [that] could reasonably be
27 expected to produce the pain or other symptoms alleged." Id. at 1036. If so, the
28 ALJ may not reject a claimant's testimony "simply because there is no showing that

the impairment can reasonably produce the degree of symptom alleged." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, if the claimant meets the first test, the ALJ may discredit the claimant's subjective symptom testimony only if he makes specific findings that support the conclusion. Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). Absent a finding or affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995); Ghanim v. Colvin, 763 F.3d 1154, 1163 & n.9 (9th Cir. 2014). The ALJ must consider a claimant's work record, observations of medical providers and third parties with knowledge of claimant's limitations, aggravating factors, functional restrictions caused by symptoms, effects of medication, and the claimant's daily activities. Smolen, 80 F.3d at 1283-84 & n.8. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ may also use ordinary techniques of credibility evaluation, such as considering the claimant's reputation for lying and inconsistencies in his statements or between his statements and his conduct. Smolen, 80 F.3d at 1284; Thomas, 278 F.3d at 958-59.[3]

    b.    The ALJ's Credibility Findings.

Plaintiff testified that he could lift about 10 pounds, sit for 15 minutes, stand

---

[3] The Social Security Administration ("SSA") recently published SSR 16-3p, 2016 SSR LEXIS 4, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims. SSR 16-3p eliminates use of the term "credibility" from SSA policy, as the SSA's regulations do not use this term, and clarifies that subjective symptom evaluation is not an examination of a claimant's character. Murphy v. Comm'r of Soc. Sec., 2016 U.S. Dist. LEXIS 65189, at *25-26 n.6 (E.D. Tenn. May 18, 2016). SSR 16-3p took effect on March 16, 2016, and therefore is not applicable to the ALJ's 2014 decision in this case. Id.

1  for 30 minutes, and that he had trouble reaching overhead with the right upper

2  extremity.  AR 20 (ALJ's findings), 31-47 (Plaintiff's testimony).  The ALJ found

3  that Plaintiff's "statements concerning the intensity, persistence and limiting effects

4  of [his] symptoms are not entirely credible" because Plaintiff's reported activities of

5  daily living contradicted Plaintiff's allegations of disability:

6      [Plaintiff] has described activities of daily living, which are not limited

7      to the extent one would expect, given the complaints of disabling

8      symptoms and limitations.  In fact, he has admitted certain abilities that

9      provide support for part of the [RFC] conclusion in this decision.  For

10      example, [Plaintiff] has reported that, with breaks, he could do

11      household chores such as do the laundry, shop for groceries, mow the

12      lawn, and water plants at home (Testimony and Ex. 8E [AR 216-18]).

13      He disclosed that his wife has a disability related to her arms and he

14      admitted he assisted her with house chores.  It appears that despite his

15      alleged impairments, [Plaintiff] has engaged in a largely normal level

16      of daily activity.  The physical capabilities requisite to performing

17      many of the tasks he reported fall well within the [RFC] assessed in this

18      Finding.  [Plaintiff's] ability to participate in such activities undermined

19      the credibility of his allegations of disabling functional limitations.

20  AR 20.  The ALJ also noted that Plaintiff "did not indicate that he required a cane

21  or other assistive devices for ambulation" and that "he was taking NSAIDs for pain,

22  along with other medications for his diabetes mellitus and hypertension."  AR 20

23  (citing Plaintiff's testimony and Exhibit 8E, p. 3 [AR 218]).

24            c.     Analysis.

25      Plaintiff argues, first, that the ALJ "failed to specify which statements by

26  Plaintiff concerning pain, functional limitations, and other symptoms were not

27  'sufficiently credible,'" arguing this is error under Smolen v. Chater, 80 F.3d 1273,

28  1284 (9th Cir. 1996).  (JS at 7.)  In Smolen, the Ninth Circuit held in relevant part

1    that the "ALJ must state specifically which symptom testimony is not credible and

2    what facts in the record lead to that conclusion."  80 F.3d at 1284 (citing Dodrill v.

3    Shalala, 12 F.3d 915, 918 (9th Cir. 1993); see also Dodrill, 12 F.3d at 918 ("It's not

4    sufficient for the ALJ to make only general findings; he must state which pain

5    testimony is not credible and what evidence suggests the complaints are not

6    credible. … He must either accept [claimant's] testimony or make specific findings

7    rejecting it.") (citation omitted); Schmidt v. Colvin, 2013 WL 537284, at *6 n.6

8    (E.D. Cal. Sept. 25, 2013) ("The Smolen case does not speak to any required

9    structure of the ALJ's decision.").  The ALJ's explanation in this case—that

10   Plaintiff's reported limitations were inconsistent with his daily activities and his

11   conservative treatment for pain—is sufficient to meet this standard.

12        Second, Plaintiff argues that none of his reported activities of daily living

13   "equate to full time medium work activity."  (JS at 9.)  Plaintiff notes that, in the

14   exertion questionnaire, for "virtually every activity" Plaintiff "has a caveat that he

15   must take breaks in order to complete those tasks."  (Id.)  The Commissioner argues

16   that, even if Plaintiff's daily activities do not "correlate to the ability to perform

17   medium exertion work," the extent of the daily activities was still greater than that

18   indicated by Plaintiff's complaints, thereby undermining his credibility.  (JS at 14.)

19   The Court finds that there is substantial evidence to support the ALJ's credibility

20   finding.

21        In the exertion questionnaire, Plaintiff stated: "I have a hard time doing *any*

22   activities or chores.  I try, but I am *always* in so much pain."  AR 216 (emphasis

23   added).  Yet at the hearing, Plaintiff testified that he was taking Excedrin and

24   Tylenol for his pain; he did not indicate taking a narcotic painkiller.  AR 41-42.  He

25   also reported doing grocery shopping, yard work, and some housework, as

26   discussed below.

27        In the exertion questionnaire, Plaintiff stated that he does his own grocery

28   shopping once a week and can carry "light objects, groceries, from my car to my

17

house." AR 217.  He also stated he could carry "groceries, 1 gallon of milk, very light objects, maybe once or twice a day."  AR 217.  At the hearing, he testified that he goes grocery shopping every 15 days with his wife.  AR 45.  He testified that his wife was under a disability with her arms, but that she still did most of the housework; he testified, "I help her a little."  AR 45.

Plaintiff testified that he could stand for only 20-30 minutes at one time. AR 44.  In the exertion questionnaire, Plaintiff stated that, when doing housework or chores, he has to stop after about 15 minutes "because the pain in my neck, my back and my right shoulder/arm is unbearable."  AR 218.  Yet in the exertion questionnaire, Plaintiff also stated that he cuts his own grass about once a month, which takes him about 3 hours "with breaks in between," and that he waters his plants daily, which takes him 1-2 hours.  AR 217.  He did qualify that "sometimes my right arm and my back start to bother me and I get a migraine and I have to quit that day and continue the next day.  I can't always do it and I rely on my son to help me."  AR 217.

In the exertion questionnaire, Plaintiff stated he could drive a car 30 to 45 minutes at a time.  AR 217.  At the hearing, however, he testified he could sit for only 15 minutes at one time.  AR 44.

Overall, the Court finds that inconsistencies between Plaintiff's hearing testimony and his exertion questionnaire undermined Plaintiff's credibility.  See, e.g., Padilla v. Colvin, 2015 WL 519106 (C.D. Cal. Feb. 9, 2015) (affirming ALJ's credibility finding based on inconsistencies between Plaintiff's hearing testimony and an exertion questionnaire).  Plaintiff's conservative use of pain medication also contradicted his complaints of constant pain.  See, e.g., Ritchie v. Astrue, 2012 WL 3020012, at *5 (C.D. Cal. July 24, 2012) ("[A]lthough plaintiff testified that she was unable to work due to pain in her back and hips, she also stated that she did not 'like' narcotics, and took only over-the-counter pain medication (i.e. Tylenol, aspirin or Advil).").  There was substantial evidence to support the ALJ's

18

credibility finding.

**B.    Issue Two: Whether the ALJ Properly Developed the Vocational Aspects of the Case.**

    **1.    Applicable Law.**

"At step four of the sequential analysis, the claimant has the burden to prove that he cannot perform his prior relevant work 'either as actually performed or as generally performed in the national economy.'" Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1166 (9th Cir. 2008) (quoting Lewis v. Barnhart, 281 F.3d 1081, 1083 (9th Cir. 2002)). The DOT is the best source for how a job is generally performed. Carmickle, 533 F.3d at 1166. "In classifying prior work, the agency must keep in mind that every occupation involves various tasks that may require differing levels of physical exertion. It is error for the ALJ to classify an occupation 'according to the least demanding function.'" Id. (quoting Valencia v. Heckler, 751 F.2d 1082, 1086 (9th Cir. 1985)). An error in the classification of past work is not grounds for reversal if it is harmless, however. See, e.g., Modena v. Colvin, 2016 WL 70328, at *8 (E.D. Cal. Jan. 6, 2016) ("Even had the ALJ misclassified this particular job under the DOT listings, such error would have been harmless because the DOT listing used by the vocational expert in the prior proceeding also classifies such work as exactly the same type of 'light work' required under the DOT listing the ALJ used here.").

    **2.    Testimony at the Hearing and the ALJ's Findings.**

Plaintiff testified that he has a seventh-grade education. AR 34. He speaks only a few words of English and cannot read English. AR 35. Plaintiff testified that for several years starting in about 1994, he worked installing wood floors. AR 37. He testified this job required him to lift about 30 pounds. AR 37.

The VE opined, "Based on the testimony, it sounds like floor installers [sic] the only one that would qualify as SGA. … So that's the title, floor installer. DOT Code is 860.381-022." AR 47. The title of the entry at DOT Code 860.381-022 is

1  "carpenter," although the entry indicates that such work "may be designated,"

2  among other things, "Hardwood-Floor Installer (construction)" or "Wood-Strip-

3  Block Floor Installer (construction)."  See DOT 860.381-022 CARPENTER, 1991

4  WL 681972.  The VE testified, "[The DOT] characterizes that work as medium

5  exertionally skilled, SVP 7. And for the most part it appears consistent with how

6  the work was actually performed.  Record suggests 30 pounds, occasionally; 30

7  pounds, frequently."  AR 48.  The VE testified that a person with the RFC found by

8  the ALJ could perform this work.  AR 48-49.

9        Based on the VE's testimony, the ALJ made the following findings:

10            The   vocational   expert   reviewed   [Plaintiff's]   vocational

11       background  documented  in  the  record  prior  to  the  hearing.    The

12       vocational expert was present to hear [Plaintiff's] testimony.  Based on

13       [Plaintiff's]  documented  vocational  background  and  [Plaintiff's]

14       testimony, the vocational expert indicated [Plaintiff] worked within the

15       last 15 years in the following occupation[:] floor installer, DOT 860-

16       381-022, a medium, skilled (SVP 7) occupation as generally performed

17       pursuant to the DOT and as performed by [Plaintiff].

18                                          . . .

19            Having  been  asked  to  assume  a  person  with  the  same  age,

20       education, and work experience as [Plaintiff], and a residual functional

21       capacity determined herein, the vocational expert testified that such an

22       individual would be able to perform his past relevant work as actually

23       performed by [Plaintiff] and as generally performed in the regional and

24       national economy.

25            The  testimony  of  the  vocational  expert  is  consistent  with  the

26       DOT, and the undersigned accepts it….

27  AR 23.

28

1    **3.     Analysis.**

2         a.     Characterization of Plaintiff's Work History.

3    Plaintiff argues that the ALJ "mischaracterized his past relevant work and …

4    reached the conclusion that [Plaintiff] is capable of performing an occupation

5    described as a carpenter when in fact Plaintiff's description of his past work is

6    clearly not that of a carpenter."  (JS at 16.)  Plaintiff argues that Plaintiff's past

7    work should have been characterized as an "installer," as described in DOT

8    869.684-026.  (JS at 17.)

9    Plaintiff relies on the Work History Report completed by Plaintiff on January

10   28, 2013 in conjunction with his application for benefits.  (Id.)  This report states

11   that, from 1994 to 2007, "I installed the floors of the RV's, which was carpet, I also

12   installed furniture, sofas.  I also installed windows.  I did the RV's plumbing

13   (installed it).  Installed water tanks in RV."  AR 191, 187.  Plaintiff stated that this

14   frequently required him to lift 30 pounds, and walk and stand for 8 hours per day.

15   AR 191.  The DOT description for an installer includes someone who "installs

16   fixtures and appliances and lay floor covering in mobile and modular homes and

17   travel trailer coaches, using handtools and power tools…."  DOT 869.684-026

18   INSTALLER, 1991 WL 687616.

19   Any error on this point was harmless.  The ALJ concluded that Plaintiff

20   could perform a range of medium work, including lifting and/or carrying 50 pounds

21   occasionally and 25 pounds frequently; standing and/or walking for 6 hours out of

22   an 8-hour workday; and sitting for 6 hours out of an 8-hour workday.  AR 19.

23   Assuming that Plaintiff's past work should have been classified as an "installer,"

24   the DOT states that that position requires medium work consistent with the RFC

25   found by the ALJ.  See Carmickle, 533 F.3d at 1166 (the plaintiff "has the burden

26   to prove that he cannot perform his prior relevant work 'either as actually

27   performed *or as generally performed in the national economy*,'" and the DOT is the

28   best source for how a job is generally performed) (emphasis added).

1          b.       Finding of Continuing Disability in Plaintiff's Worker's

2                   Compensation Case.

3          Plaintiff argues, "The fact that [Plaintiff] was never released to return to his

4 past work is inconsistent with the ALJ's conclusion that [Plaintiff] was in fact

5 capable of performing that occupation." (JS at 18.)  Plaintiff appears to be referring

6 to the fact that his treating chiropractor for worker's compensation purposes never

7 released him to return to work.  As discussed above, a chiropractor is not an

8 acceptable medical source, and a disability finding made in the worker's

9 compensation context is not binding in the Social Security context.  See Paulson,

10 368 F. App'x at 760; Booth, 181 F. Supp. 2d at 1104.

11                                      **V.**

12                                 **CONCLUSION**

13         Based on the foregoing, IT IS ORDERED that judgment shall be entered

14 AFFIRMING the decision of the Commissioner denying benefits.

15

16 DATED:  March 13, 2017

17                                        _____

18                                        KAREN E. SCOTT
                                          United States Magistrate Judge
19

20

21

22

23

24

25

26

27

28

                                          22